UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VANCE EDWARD JOHNSON, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-3122 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

**OPINION ON DISMISSAL**

Petitioner Vance Edward Johnson, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ-CID), has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his robbery conviction, for which he was sentenced to life imprisonment. (Docket No. 1.) Respondent filed a motion for summary judgment (Docket No. 15), to which Petitioner has filed a response (Docket No. 16). After considering the pleadings and the entire record, the Court will grant Respondent's motion for summary judgment, and dismiss this habeas petition.

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was indicted on a charge of robbery in cause number 1031454 in the 184th District Court of Harris County, Texas (Docket No. 11-10 at 12), to which he entered a plea of not guilty (Docket No. 11-38 at 81). A jury heard evidence of the following, as summarized in pertinent part by the First Court of Appeals for the State of Texas:

> Sam Sbaiti, the complainant, testified that on June 10, 2005, he was working as a bank teller for Compass Bank when [Johnson], with a black bag in hand, approached him and said, "Put all the money on the counter, or I'm going to blow your fucking head off." The complainant placed the money on the counter because [Johnson] "was concealing his hand in the bag as though he had a gun." While the complainant was

putting money on the counter, [Johnson] kept telling him, "If you don't hurry up, I'm going to blow your head off.  I will fucking kill you."  When the complainant said, "[T]hat's all I have," [Johnson] told him to turn around and take four steps.  After taking four steps, the complainant looked back and saw that [Johnson] was gone.

Federal Bureau of Investigation ("FBI") Special Agent R. Sharp testified that on June 20, 2005, ten days after the Compass Bank robbery, a man robbed a nearby Sterling Bank.  After obtaining a description of the man who had robbed the Sterling Bank, Sharp "started patrolling the area looking" for any sign of the robber.  As he was driving on the road that runs behind the Sterling Bank, Sharp noticed [Johnson] walking towards the University of Houston.   Because [Johnson] matched the general description of the man who had robbed the Sterling Bank, Sharp pulled up next to him and, after identifying himself as a special agent with the FBI, asked [Johnson] for his identifying information, i.e., "date of birth, social [security number], address, employment, [and other] general things that [Sharp typically] would ask somebody in an interview."  After [Johnson] explained that he was a student at the University of Houston and provided the requested identifying information, Sharp "[w]ent back to the office and began preparing [his] paperwork."  However, when Sharp began checking the information that [Johnson] had given him, he discovered that although [Johnson's] name was accurate, other information was false.

When Sharp discovered that [Johnson] had provided him with inaccurate information, he began to suspect that [Johnson] may have been involved in the Compass Bank robbery.  Sharp showed the complainant a photographic array containing a photograph of [Johnson] and five other men, and the complainant identified [Johnson] as the man who had robbed him at the Compass Bank on June 10, 2005.  Based on that identification, a police officer obtained an arrest warrant for [Johnson], and Sharp drove to [Johnson's] residence, accompanied by FBI Special Agent Cheatam, to arrest [Johnson].  When they arrived at [Johnson's] residence, Sharp saw [Johnson] exit the house, so he called [Johnson's] name.   [Johnson] pointed over Sharp's shoulder and said that the man that Sharp was looking for was over there.  Then [Johnson] ran and attempted to scale a fence, but before [Johnson] could climb over the fence, "Cheatam was able to grab him."  Sharp and Cheatam then "turned [Johnson] over to the custody of the Houston Police Department."  Houston Police Department Sergeant D. Ryza testified that he investigated [Johnson's] involvement in the robbery of Compass Bank.  On June 22, 2005, after [Johnson] "had been placed under arrest by FBI agents," Ryza went to [Johnson's] house, and Kathy Alvarez, who said she had been staying at the house with [Johnson] "on and off" for approximately three weeks, gave Ryza consent to search the home.  Ryza and four other police officers searched the

house and found approximately $3,000 in cash hidden throughout the house.

*Johnson v. State,* No. 01-07-00461-CR, 2009 WL 1331857 at *1-2 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (not designated for publication).  The jury found Petitioner guilty and, after finding the allegations in two enhancement paragraphs stating that Petitioner had two prior felony convictions true, assessed punishment of life imprisonment.  (Docket No. 11-38 at 81.)

On direct appeal, Petitioner asserted that the trial court erred in denying Petitioner's motion to suppress evidence, admitting testimony about an extraneous offense (the Sterling Bank robbery), and denying his motion for a mistrial after admitting evidence of the extraneous offense.  *Perez*, 2009 WL 1331857 at *1.  The state intermediate appellate court addressed each claim on the merits and affirmed the lower court's judgment of conviction.  *Id*. at *5.  The Texas Court of Criminal Appeals refused a petition for discretionary review.

Thereafter, Petitioner sought state habeas relief on the following grounds:

1.      He was denied due process when two jurors viewed him in restraints.

2.      The trial court abused its discretion and denied Petitioner due process by:
   a.      denying the jury's request during deliberations for Petitioner to stand before them;
   b.      informing the venire panel that two enhancement paragraphs were alleged in Petitioner's case;
   c.      attempting to cure error by instructing the jury to disregard testimony concerning an extraneous robbery;
   d.      denying Petitioner's motion to testify free from impeachment; and,
   e.      denying Petitioner's motion to suppress.

3.      The trial court improperly admitted the consent to search form in violation of Petitioner's right to confrontation.

4.      He was deprived of the effective assistance of counsel at trial because trial counsel failed to:
   a.      investigate a State's witness who could not identify Petitioner from a photo spread;
   b.      investigate whether two jurors saw Petitioner in shackles;

       c.      interview Petitioner's parole officer;

       d.      object when the trial court denied the jury's request for Petitioner to approach the jury box;

       e.      object to the trial court informing the venire panel that Petitioner had two enhancement paragraphs; and,

       f.      object to the State's closing argument.

5.     He was denied the effective assistance of appellate counsel when his counsel failed to file a motion to reset the time in which to move for a new trial.

(Docket No. 11-20 at 17-92.)  The state district court, sitting as a habeas court, recommended that Petitioner's state habeas application be denied and entered written findings and conclusions of law.  (Docket No. 11-39 at 23-26.)  The Texas Court of Criminal Appeals denied the application on the findings of the trial court without a hearing or written order.  (Docket No. 11-32.)

In his present federal petition for writ of habeas corpus Petitioner seeks relief on each of the same grounds raised in his state habeas application, as outlined above.  (Docket No. 1.) Respondent moves for summary judgment asserting that Petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) and that his claims fail on the merits.  (Docket No. 15.)

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where the pleadings and summary judgment evidence show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to

show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *United States v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence.  *See Harrington v. Richter*, – U.S. –, 131 S.Ct. 770, 787 (2011) (noting that "state courts are the principal forum for asserting constitutional challenges to state convictions").  The Antiterrorism and Effective Death Penalty Act (AEDPA), codified as amended at 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review.  *Renico v. Lett*, – U.S. –, 130 S.Ct. 1855, 1862 (2010) (quotations omitted).

AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)."  *Richter*, 131 S.Ct. at 784.  As previously mentioned, the Court of Criminal Appeals addressed each of Petitioner's present claims on habeas review.  This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'"  *Berghuis v. Thompkins*, – U.S. –, 130 S.Ct. 2250, 2258 (2010) (quoting 28 U.S.C. § 2254(d)(1)).  The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan*, 550

U.S. 465, 473 (2007).   Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction.   *Richter*, 131 S.Ct. at 786 (citation omitted); *see also Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011).   "If this standard is difficult to meet, that is because it was meant to be."   *Richter*, 131 S.Ct. at 786.

"Review under § 2254(d)(1) focuses on what a state court knew and did."   *Cullen v. Pinholster*, – U.S. –, 131 S.Ct. 1388, 1399 (2011).   Recognizing that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."   *Id.*, 131 S.Ct. at 1399, 1400.   Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review."   *Id.*, 131 S.Ct. at 1400.

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.   *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).   Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.   *Id.*   Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.   *Id.*

<u>DISCUSSION</u>

I. <u>Restraints</u>

Petitioner asserts that he was denied a fair trial because on one occasion two jurors allegedly observed him wearing leg restraints in the courtroom.  This incident allegedly occurred during jury selection when two jurors remained in the courtroom to speak with the judge or have paperwork signed as Petitioner was being led out of the courtroom.  (Docket No. 11-45 at 23; 6 R.R. 10–13.)  Petitioner alleges that he mentioned the incident to his attorney, Mr. Hale, but no immediate action was taken.  Petitioner brought the incident to the trial court's attention himself at the start of the punishment phase of his trial and the following discussion ensued:

> THE DEFENDANT:  Two of the jurors already seen me shackled.  For them not to see me shackled now makes no difference.  Two to 12.
>
> THE COURT:  What makes you think the jurors saw you shackled?
>
> THE DEFENDANT:  Don't make me think.  I know they did.  They were standing right there when I passed through.
>
> THE COURT:  I'm not familiar with that.
>
> THE DEFENDANT:  I am.  The one about 50-something, I don't know her number; but I know her face.  She was standing right there.  She had to talk to you, you know.  You told her to whatever, to stay here; and she going to talk to you, approach the bench.  She went right there to stand right there; and then you stand up there talking to this black guy, only black guy on the jury.  You signing his thing.  I'm standing right here.  Shackled both times, you know.
>
> THE COURT:  Why didn't you just put your feet under the table?
>
> THE DEFENDANT:  Because they told me to stand up and go out.
>
> THE COURT:  The bailiff?  And which bailiff was that?
>
> THE DEFENDANT:  I don't know.  I think—I don't think he was paying attention on one of them.  One was standing—right there, and you walked right here past her.

THE COURT:  Okay.  We try to be very careful that the jurors do not see you shackled, and the shackles are covered with black fabric so it's less noticeable.  Are you aware of any of this?

THE BAILIFF:  Totally unaware, Judge.

THE COURT:  How about you?

THE BAILIFF:  I—

THE DEFENDANT:  Everybody saw it.

THE COURT:  Wait just a minute.

THE DEFENDANT:  I told my lawyer—

THE COURT:  They get to talk, too.  And were you aware of any of this?

THE BAILIFF:  The time I was out here, he was under the table.  There was no way.

THE COURT:  His feet?

THE BAILIFF:  Sorry.  His feet were under the table when I was here, and I always watch that.  So—

THE COURT:  I try to watch for that, and I didn't notice it.  Did you notice anything, Mr. Hale?

MR. HALE:  I have spoken with my client about it.  I did not notice it at the time.  I intended to talk to the jurors about it once the trial is over, to see about a Motion for New Trial.

THE COURT:  Okay.  Well, did you want to be heard on that?

MR. MAYR:  I want to clarify something for the record.  When the defendant was referring to "over there," he was referring to the area on the opposite side of the courtroom in front of the door to the holdover cell, which is approximately some 20 feet from the jury box.  If Deputy Durham is correct, I don't believe the jurors ever moved out of the jury box area located on the north side of the courtroom.  The area that the defendant was pointing to was on the south side of the courtroom.  So, I don't think it would have been possible that any jurors were over in that area.

THE COURT:  I presume he was talking about jury selection.

MR. HALE:  Yes, Your Honor.

THE DEFENDANT:  Thank you.

MR. HALE:  Your Honor, if I may, what he is talking about, there was a black male juror who came up to get some paperwork signed by you.  And I believe what my client is saying is that at that time he was over here close to where the coordinator's bench is and the bailiff's bench is while the person was leaning over talking to you.  So, there would have been a direct line of sight from where the person was to where my client was standing.  And I do believe that's what he's talking about.  And I don't have a specific recollection of this, but I would not be surprised to find it is true that simply a matter when we sent the jury out but one or two lingered behind to take care of another matter.  And I think everybody missed it except for perhaps my client.

THE COURT:  Because normally the bailiffs don't move him away from the table if there are jurors around.

THE BAILIFF:  That's right.  No movement.

THE COURT:  Everyone put everything on the record they want to put on?  You have something else?

MR. MAYR:  We're done.

(Id.)

In response to Petitioner's state habeas application, Mr. Hale submitted an affidavit stating the following in regard to this claim:

I was with Mr. Johnson throughout the entirety of the trial.  I have tried over 150 felony trials in my career and am always cautious whenever my clients are in restraints.  I was not aware of a time when Mr. Johnson's restraints were in view of the jury.

Mr. Johnson did comment on a time when he believed that a juror might have seen his shackles.  I believe that it is unlikely that he was seen in that manner because of the time, place and angle he believes it might have occurred.  I further believe that if he was seen in such a manner, it

would have been a fleeting glimpse and would have had no bearing on the outcome of the trial.

(Docket No. 11-39 at 14-15.)  The state habeas court found Mr. Hale's affidavit credible and the facts asserted therein to be true.  (Id. at 23.)

Based on this record the state habeas court made the following findings of fact regarding this claim:

> 3.  The Court finds based on the credible affidavit of Jeff Hale that Hale was with the applicant throughout the entirety of the trial and Hale believes that it is unlikely that a juror observed the applicant in shackles due to the time, place, and angle the applicant relies upon.  *See March 16, 2012, Affidavit of Jeff Hale.*

> 4. The Court finds based on the credible affidavit of Jeff Hale that Hale believes that if a juror did see the applicant in shackles it would have been a fleeting glimpse and would have had no bearing on the outcome of the trial.  *See March 16, 2012, Affidavit of Jeff Hale.*

> 5. The Court finds based on the credible affidavit of Jeff Hale that Hale does not recall whether he inquired or investigated whether any jurors observed the applicant in shackles.  *See March 16, 2012, Affidavit of Jeff Hale.*

> 6. The Court finds that the court reporter's record supports a finding that jurors did not observe the applicant shackled.  (VI R.R. at 11-12.)

(Docket No. 11-39 at 23-24.)  Based on its own review of the record and the findings of the trial court, the Texas Court of Criminal Appeals denied relief on this claim without a hearing. (Docket No. 11-32.)  Because the denial amounts to an adjudication on the merits, *see Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999), the factual findings underlying the adjudication are presumed correct unless rebutted by clear and convincing evidence.  *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001).

The Supreme Court has held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its

discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005).  However, use of restraints does not undermine the presumption of innocence, and no specific finding of a state interest is required, if the restraints are obscured from the view of jurors.  This is because only "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process." *Id.* at 630; *Chavez v. Cockrell,* 310 F.3d 805, 808–09 (5th Cir. 2002).  Moreover, the Fifth Circuit has long held that "brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial, and defendants bear the burden of affirmatively demonstrating prejudice." *United States v. Diecidue*, 603 F.2d 535, 549 (5th Cir. 1979).  On collateral review of a state conviction, a federal court will grant habeas relief only when the use of restraints "had a substantial and injurious effect or influence in determining the jury's verdict." *Hatten v. Quarterman,* 570 F.3d 595, 604 (5th Cir.2009) (citations and internal quotation marks omitted).  Overwhelming evidence of a defendant's guilt may be sufficient to render harmless any error in shackling a defendant. *Id.*

Petitioner has not presented clear and convincing evidence rebutting the state habeas court's finding that jurors did not see Petitioner in shackles.  Petitioner's only rebuttal to the habeas court's finding is a seeming inconsistency between Mr. Hale's statements in the trial record and his habeas affidavit.[1]  However, Mr. Hale's statement at trial that he "would not be surprised to find" that the incident occurred as Petitioner asserted, does not necessarily contradict

---

[1] Mr. Hale stated during trial, "I don't have a specific recollection of this, but I would not be surprised to find it is true that simply a matter when we sent the jury out but one or two lingered behind to take care of another matter.  And I think everybody missed it except for perhaps my client."  (Docket No. 11-45 at 23, 6 RR 10–13.)  However, in his habeas affidavit Mr. Hale stated, "I was not aware of a time when Mr. Johnson's restraints were in view of the jury"; and, "I believe that it is unlikely that he was seen in that manner because of the time, place and angle he believes it might have occurred."  (Docket No. 11-39 at 14-15.)

his later statement that he "believe[s] that it is unlikely that [Petitioner] was seen in that manner." Instead, it simply confirms that Mr. Hale did not investigate the incident further, given his skepticism as to whether it occurred and his belief that it did not make a difference in the outcome of the trial.  Because Petitioner has not met his burden of rebutting the state habeas court's finding on this issue, it must be accepted as correct on federal habeas review.

Based on the record before it, the state court's denial of Petitioner's shackling claim was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law. Moreover, the state habeas court's determination that the incident did not occur as Petitioner alleges was not an unreasonable determination of the facts in light of the evidence presented in that proceeding.  Having found that jurors did not observe Petitioner in shackles, there was no reason to inquire whether the trial court made the required determination under *Deck* before allowing Petitioner to be shackled during trial, nor was it necessary to address whether doing so resulted in any prejudice to Petitioner.  Because the record does not support Petitioner's assertion that jurors saw him in shackles at trial, Petitioner is not entitled to relief on this claim.

## II.  Trial Court Error

In reviewing claims of trial court error on federal habeas review, the question is not whether the state trial court properly applied state evidentiary rules, but whether the petitioner's federal constitutional rights were violated by the state trial court's rulings on evidentiary matters. *See Bigby v. Dretke,* 402 F.3d 551, 563 (5th Cir. 2005) (holding federal habeas review of a state court's evidentiary ruling focuses exclusively on whether the ruling violated federal constitutional protections).  Due process is implicated only for rulings "of such a magnitude" or "so egregious" that they "render the trial fundamentally unfair." *Id.*  Relief will be warranted only when the challenged evidence "played a crucial, critical, and highly significant role in the

trial." *Id.* The due process inquiry must consider the significance of the challenged evidence "in the context of the entire trial." *See Gonzales v. Thaler,* 643 F.3d 425, 430–31 (5th Cir. 2011). The test to determine whether a trial error rendered the trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *See Guidroz v. Lynaugh,* 852 F.2d 832, 835 (5th Cir. 1988); *Rogers v. Lynaugh,* 848 F.2d 606, 609 (5th Cir. 1988).

A.   Denial of Request for Petitioner to Stand Before Jury

Petitioner asserts that the trial court erred by denying a juror's request for Petitioner to stand before the jury, take off his glasses and look the jurors directly in the face.   (Docket No. 1 at 6.)   The episode occurred during deliberations after the jury was allowed to view video surveillance footage from the bank robbery.  (Docket No. 11-15 at 2-4; 4 R.R. 206-13.)   The request was ultimately denied based on the State's objection.   (Id. at 4; 4 R.R. 212-13.) Petitioner asserts that the denial was an abuse of discretion under Article 36.02 of the Texas Code of Criminal Procedure because bank surveillance footage presented to the jury was fuzzy and the juror merely wanted to get a closer look at Petitioner for identification purposes. Petitioner further contends that the only reason the court denied the request was its unwarranted concern about removing Petitioner's shackles and the possibility that he might "pounce on the jurors."  (Docket No. 16 at 13.)

Petitioner has not shown any fundamental unfairness resulting from the denial of a juror's request to view Petitioner up-close.   The record does not support Petitioner's contentions that there was no objection to the request, or that the court denied the motion based on unfounded fears about security.   Instead, the motion was clearly denied based on the State's objection. (Docket No. 11-15 at 4; 4 R.R. 212-13.)  Petitioner's argument that the denial violated the Texas

rules of criminal procedure is unavailing because such error "does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005).  Petitioner has not presented any Supreme Court precedent showing that it was fundamentally unfair to deny the juror's request in this instance.  And, Respondent correctly notes that granting the request may have contravened state law prohibiting the introduction of evidence after the conclusion of closing arguments.  *Pena v. State*, 353 S.W.3d 797 (Tex. Crim. App. 2011) (citing *Williams v. State*, 35 Tex. Crim. 183, 32 S.W. 893, 894 (1895)).  Finally, one juror's request for a closer look at Petitioner does not show that the jury was unable to properly evaluate the evidence, as the jury clearly had ample opportunity to observe Petitioner throughout the trial.  Thus, Petitioner is not entitled to relief on this ground.

B.  Statements to Venire Panel about Enhancement Paragraphs

Petitioner next asserts that the trial court erred by informing the venire panel about two enhancement paragraphs in Petitioner's indictment.  (Docket No. 1 at 8.)  Petitioner cites one instance during jury selection in which the trial court stated, while explaining enhancements generally, "The enhancement paragraph just says he was previously convicted of such and such offense on such and such date, such and such court, such and such cause number."  (Docket No. 11-12 at 58; 3 R.R. 29.)  Petitioner contends that the court's use of the definite article "the" and the pronoun "he" shows that the court was specifically referring to Petitioner.  However, when read in context, the record does not support Petitioner's contention.  Instead, the record reflects that the trial court only discussed enhancements during jury selection in hypothetical terms and did not mention Petitioner's prior criminal history or the specific enhancements in his indictment.  The statement challenged by Petitioner was made while the judge was explaining

the effect of enhancements on sentencing ranges generally and was merely intended to clarify what an enhancement is.  Because Petitioner has not shown any prejudice resulting from this statement, the Court denies relief on this ground.

## C.   Instruction to Disregard Testimony about Extraneous Offense

Petitioner challenges the trial court's decision to cure the improper admission of testimony regarding the Sterling Bank robbery by instructing the jury to disregard.  (Docket No. 1 at 7, 9; Docket No. 2 at 12-14.)  Petitioner raised this issue on direct appeal and the First Court of Appeals of Texas reasoned as follows:

> Generally, a timely instruction to disregard cures an error associated with an improper question and answer, even one regarding extraneous offenses. *Ovalle v. State*, 13 S.W.3d 774, 783–84 (Tex. Crim. App. 2000); *see Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (concluding that testimony referring to inadmissible extraneous offense was rendered harmless by instruction to disregard because testimony "was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard").  Moreover, we presume that a jury will obey a trial court's instruction to disregard unless "the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds."  *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999) (quoting Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987), *cert. denied*, 484 U.S. 905, 108 S. Ct. 248, 98 L.Ed.2d 206 (1987)); *see Baker v. State*, 177 S.W.3d 113, 126 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Gardner*, 730 S.W.2d at 696).  Only an extremely inflammatory statement overcomes this presumption.  *See Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991) (holding that instruction to disregard cured prejudice created by prosecutor's argument that compared defendant to Adolf Hitler); *Logan v. State*, 698 S.W.2d 680, 683-84 (Tex. Crim. App. 1985) (holding that instruction to disregard cured prejudice created by prosecutor's reference to homosexual relationship between defendant and her alibi witness).
>
> Here, the only testimony about the Sterling Bank robbery came from Special Agent Sharp, who testified that he talked to appellant because appellant appeared to match the physical description of the man who had robbed the Sterling Bank.  Sharp never stated that appellant robbed the Sterling Bank.  In fact, he testified that he did not believe that

> appellant had been involved in the Sterling Bank robbery.  Sharp's testimony explained how appellant became a suspect in the Compass Bank robbery.  Appellant does not explain in his briefing, nor do we find evidence in the record, that Sharp's fleeting reference to the Sterling Bank robbery was so inflammatory that it could not have been cured by the trial court's instruction.  Accordingly, we hold that any possible error in admitting the testimony about the Sterling Bank robbery was cured by the trial court's instruction to disregard.  *See Ovalle*, 13 S.W.3d at 783–84.

*Johnson v. State*, slip op. (Docket No. 11-3) at 9–10.  Because this was "the last reasoned opinion" on the matter, it must be reviewed to determine whether the denial of this claim was contrary to, or an unreasonable application of, federal law.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Supreme Court has held that the admission of evidence may violate the Due Process Clause of the Fourteenth Amendment if the evidence is "so unduly prejudicial that it renders the trial fundamentally unfair."  *Payne v. Tennessee,* 501 U.S. 808, 825, 111 S. Ct. 2597, 115 L.Ed.2d 720 (1991) (citing *Darden v. Wainwright,* 477 U.S. 168, 179–83, 106 S. Ct. 2464, 91 L. Ed.2d 144 (1986)); *see also Porter,* 709 F.2d at 957 (quoting *Mendiola,* 635 F.2d at 491).  In *Enriquez v. Procunier,* 752 F.2d 111 (5th Cir. 1984), the Fifth Circuit held that an extraneous offense may be admitted into evidence without violating the Due Process Clause if the government makes a "strong showing that the defendant committed the offense" and the extraneous offense is "rationally connected with the offense charged."  *Procunier*, 752 F.2d at 115.  Still, "the erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction."  *Neal v. Cain,* 141 F.3d 207, 214 (5th Cir. 1998).  Finally, even where evidence of an extraneous offense is admitted in error, to obtain habeas relief the petitioner must show that the evidence had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Wood v.*

*Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L.Ed.2d 353 (1993)).

The record does not show that the admission of testimony concerning the Sterling Bank robbery had a substantial and injurious effect or influence in determining the jury's verdict here. The record shows that the trial court allowed Special Agent Sharp to bring up the Sterling Bank robbery on the understanding that additional testimony would be elicited to satisfy the *Procunier* test; however, after the prosecution failed to proffer additional evidence linking Petitioner to the Sterling Bank robbery the court determined that the original testimony was inadmissible and properly instructed the jury to disregard it.   (Docket No. 11-14 at 44-46; 4 R.R. 162-71.) Petitioner has not shown that this decision was a crucial, highly significant factor in his conviction, especially given the victim Sam Sbaiti's compelling testimony identifying Petitioner as the perpetrator of the Compass Bank robbery.  As the appeals court noted, Sharp's testimony about the Sterling Bank robbery merely explained how Petitioner became a suspect in the Compass Bank robbery.  Sharp did not testify that Petitioner robbed the Sterling Bank, instead, he clearly stated that he did not believe that Petitioner had been involved in that robbery.  Thus, there is no reason to believe that Sharp's mention of the Sterling Bank robbery was so unduly prejudicial that it rendered the trial fundamentally unfair.  Because Petitioner has not shown that the instruction to disregard was insufficient to cure any possible error, Petitioner is not entitled to relief on this ground.

D.  Denial of Motion to Testify Free from Impeachment ("*Theus* Motion")

Petitioner asserts that the trial court abused its discretion by denying his motion to testify without being subject to impeachment using his prior convictions, as permitted under *Theus v. State,* 845 S.W.2d 874 (Tex. Crim. App. 1992).  Under Rule 609 of the Texas Rules of Evidence,

a witness's credibility may be attacked using evidence that the witness has been convicted of a felony or a crime involving moral turpitude. *See* Tex. R. Evid. 609(a). *Theus* identifies the factors a Texas court must consider in determining whether convictions may be used for impeachment purposes under Rule 609(a). Applying those factors, the trial court determined that Petitioner's prior felony convictions for bribery, unauthorized use of a motor vehicle, theft, aggravated assault and theft of an automobile would be admissible for impeachment purposes should Petitioner choose to testify. (Docket No. 11-14 at 44-46; 4 R.R. 171-77.) Based on this ruling, Petitioner stated on the record that he did not wish to testify and declined to put on a defense. (Id. at 47; 4 R.R. 178.)

Because the trial court made its determination based on state law, this Court may not sit in judgment of that decision. *Creel v. Johnson,* 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied,* 526 U.S. 1148, 119 S. Ct. 2027, 143 L. Ed.2d 1038 (1999); *Weeks v. Scott,* 55 F.3d 1059, 1063 (5th Cir.1995). Instead, to obtain relief on this claim Petitioner must show that the decision "render[ed] the trial fundamentally unfair." *Bigby,* 402 at 563. Petitioner's only argument that the trial court's ruling was unfair, is that the court knew Petitioner was facing a possible life sentence and that he was the only potential witness for the defense. Thus, Petitioner contends that by denying his *Theus* motion the trial court essentially denied him the opportunity to put on any defense.

Petitioner's reasoning is not persuasive. Petitioner has not offered any support for his contention that the availability of other witnesses for the defense has any bearing on the determination whether prior convictions can be used for impeachment purposes under state or federal law. Petitioner also fails to show that the ruling denied him an opportunity to put on a defense. Petitioner was not denied the opportunity to testify, but merely the ability to do so free

from impeachment using his prior convictions.  Petitioner's decision not to testify was clearly a strategic decision made in consultation with his defense counsel and Petitioner was aware there were no other defense witnesses available when he made this decision.  Because Petitioner has not shown that the denial of his *Theus* motion rendered his trial fundamentally unfair, this claim is without merit.

## E.  Denial of Motion to Suppress

Petitioner's remaining claims of trial court error are based on the denial of his motion to suppress evidence obtained from the warrantless search of his home.  (Docket No. 1 at 10; Docket No. 2 at 18-23.)  The search was conducted pursuant to a Voluntary Consent for Search and Seizure form signed by Kathy Alvarez, an individual who was present in Petitioner's home at the time of his arrest.  (Docket No. 11-18 at 10; 8 R.R. State's Exhibit 2.)  Petitioner claims that Alvarez did not have authority to consent to the search, that she was never properly identified, and that the prosecution made no attempt to make her available for cross-examination either during the suppression hearing or at trial.  (Docket No. 1 at 7; Docket no 2 at 11.)

Petitioner first contends that the trial court erred by admitting the consent to search form during the suppression hearing because Petitioner was not given an opportunity to confront Ms. Alvarez.  In *Crawford v. Washington,* 541 U.S. 36 (2004), the Supreme Court held that admission of out-of-court "testimonial statements" violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant regarding the statements.  *Crawford,* 541 U.S. at 68-69.  In *Davis v. Washington*, 547 U.S. 813 (2006), the Court clarified what qualifies as a "testimonial" statement, explaining:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an

> ongoing emergency. They are testimonial when the circumstances
> objectively indicate that there is no such ongoing emergency, and that the
> primary purpose of the interrogation is to establish or prove past events
> potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822.

Although Petitioner asserts that Alvarez's consent statement is testimonial under *Davis*, he has not presented any legal authority supporting his contention that the right to confrontation applies to suppression hearings. Because neither the Supreme Court nor the Fifth Circuit have ever held that the right to confrontation applies to pretrial proceedings, Petitioner may not obtain federal habeas relief based on the admission of Alvarez' consent statement during the suppression hearing. *See U.S. v. Morgan*, 505 F.3d 332, 338 (5th Cir. 2007) (noting that "the Fifth Circuit has not decided whether *Crawford* applies to pretrial proceedings and determinations").

Next, Petitioner asserts that the trial court erred by denying his motion to suppress after finding that the consent-to-search form was sufficient to render the search reasonable under the Fourth Amendment. It is well settled that a claim challenging the admission of evidence at trial pursuant to an allegedly unconstitutional search and seizure is not cognizable in a federal habeas proceeding if the state has provided the opportunity for full and fair litigation of the claim. *Stone v. Powell*, 428 U.S. 465, 481-82 (1976). The United States Court of Appeals for the Fifth Circuit has held that such a search and seizure claim cannot be reviewed after the petitioner has been provided an opportunity to challenge the search and seizure, regardless of whether he has taken advantage of it. *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (citing *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)).

Here, Petitioner was afforded a full and fair opportunity to challenge the search and seizure of evidence from his home via his pre-trial motion to suppress.  Petitioner also raised this issue on direct appeal and the First Court of Appeals of Texas reasoned as follows:

> At the pretrial hearing on appellant's motion, Officer Ryza testified that when he arrived at appellant's house, appellant had already been arrested. When Ryza knocked on the front door of the house, Alvarez arrived at the door and, indicating that she "had custody of the house at that time," agreed to let Ryza and the other police officers search the house.  After obtaining Alvarez's written consent, Ryza and four other officers searched appellant's house.   Appellant testified that Alvarez did not have "permission to control who came into and out of the house when [he] left" and that she was staying at his house only "for that one day."
>
> After hearing the evidence at the pretrial hearing, the trial court found that Alvarez "was staying at the house, that she was in control of the house, and that she legally could give consent to search the house."
>
> Warrantless searches are presumed to be unreasonable, but there are well-recognized exceptions.  *Wiede v. State,* 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  A third party may consent to a search when she has "equal control over and authority to use the premises being searched." *Maxwell,* 73 S.W.3d at 281.  Mutual use of the property by a third party gives rise to common authority over the premises such that the third party may consent to a warrantless search.  *Id.* at 281-82.  Here, the trial court's finding that Alvarez "was staying at the house" and "was in control of the house" are supported by Sergeant Ryza's testimony.  Based on this mutual use of appellant's residence, Alvarez had the authority to consent to the warrantless search of appellant's house.  *See id.*  Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress evidence.

*Johnson v. State*, slip op. (Docket No. 11-3) at 6-7.  Because Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, this claim is precluded here and must be dismissed.  *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006); *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (citing *Stone*, 428 U.S. at 494).

Finally, Petitioner contends that admission at trial of the consent-to-search form itself violated the Confrontation Clause.[2]  However, even accepting Petitioner's contention that the consent form is a "testimonial statement" for Confrontation Clause analysis, Petitioner has not shown that he suffered any prejudice by its admission at trial.  Petitioner offers no basis for concluding that admission of the form itself "had substantial injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993); *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007) (holding that the *Brecht* standard applies in all § 2254 proceedings).  The consent form does not establish any element of the offense for which Petitioner was convicted, thus, the jury could not have substantially relied upon the form in reaching its verdict.  Because Petitioner cannot show that admission of the consent form had a substantial injurious effect or influence, he is not entitled to relief on this claim.

## III.  Prosecutorial Error

Petitioner asserts that the prosecution improperly relied upon evidence from the extraneous Sterling Bank robbery in its closing argument.  (Docket No. 1 at 7, 9; Docket No. 2 at 12-14.)  Specifically, Petitioner challenges the following statement made by the prosecutor, Mr. Mayr, during his closing statement:

> And it's not – when he is arrested, he has got large – he has got large quantities of cash on him.  Grant it, that money could have – [defense counsel] is going to get up here and tell you he could have just earned that money working for his brother in the construction business or wherever. Money could have come from anywhere.  That's right.  But that money came from Compass Bank.  Money that was in a dryer, in a bin, hidden in a shaving kit.

---

[2]  Petitioner also appears to argue that admission at trial of evidence seized in the search independently violated the Confrontation Clause because that evidence was tainted by Petitioner's inability to confront Ms. Alvarez.  This argument, however, is merely an extension of Petitioner's Fourth Amendment claim which, as discussed above, is not cognizable here.

(Docket No. 11-14 at 51; 4 R.R. 192.)  Petitioner asserts that some of the money to which Mr. Mayr was referring could not have come from the Compass Bank robbery because it had red dye on it which was only used in the Sterling Bank robbery.  However, on collateral review the state habeas court found, based on the court reporter's record, that "the State did not refer to an extraneous offense during closing arguments."  (Docket No. 11-39 at 28.)

As a general rule, habeas corpus relief is available for prosecutorial misconduct only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair.  *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S. Ct. 2464 (1986).  The conduct must either be so persistent and pronounced, or the evidence so insubstantial that but for the remarks, probably no conviction would have occurred.  *Kirkpatrick v. Blackburn,* 777 F.2d 272, 281 (5th Cir.1985) (*per curiam* ).

In this case, Petitioner has not shown, nor does it appear from the record, that Mr. Mayr's statement was improper.  Under Texas law, the four permissible areas of jury argument are: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to the argument of opposing counsel, and (4) pleas for law enforcement.  *Guidry v. State,* 9 S.W.3d 133, 154 (Tex.Crim.App.1999).  As the state habeas court found, the prosecutor did not directly refer to an extraneous offense during his closing argument; instead, he merely referred generally to money seized from Petitioner's person and house as being from the Compass Bank robbery. Petitioner has not shown that this was an unreasonable deduction from the evidence.  Petitioner's contention that money with red dye on it could have only come from the Sterling Bank robbery overlooks the possibility that some of the Compass Bank proceeds could have become contaminated with red dye from the Sterling Bank robbery.  Such a reasonable deduction is permissible on closing argument.

Nor has Petitioner shown that the prosecutor's statement was so egregious as to render Petitioner's trial fundamentally unfair.  Petitioner's assertion that the prosecutor "inflamed the jury [sic] minds by redirecting their thoughts back to the extraneous offense that they were told to disregard" is specious.  (Docket No. 16 at 21.)  Because the prosecutor did not directly bring up the Sterling Bank robbery or mention the red dye, it is highly unlikely that the jury would have assumed Mr. Mayr was referring to the Sterling Bank robbery, much less that they would have ignored the court's instruction to disregard any evidence of an extraneous offense.

Thus, Petitioner's prosecutorial misconduct claim does not warrant federal habeas relief.

## IV.  Trial Counsel Performance

Petitioner asserts that his trial counsel rendered ineffective assistance by failing to investigate a potential witness and alibi, and by failing to object to trial court and prosecutorial errors.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered

adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because Petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decisions on those claims will be overturned only if they were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  And, Petitioner bears the burden

of rebutting by clear and convincing evidence a factual determination made on state habeas review.  28 U.S.C. § 2254(e)(1).

A.  Failure to Investigate

Petitioner claims that trial counsel rendered ineffective assistance by failing to investigate or interview the following: (1) a potential witness, Ms. Penick, who was present during the Compass Bank robbery but could not identify Petitioner from a photo spread; (2) the jurors who allegedly saw Petitioner in shackles; and, (3) Petitioner's parole officer who allegedly could provide an alibi for Petitioner at the time of the robbery.  (Docket No. 1 at 10; Docket No. 2 at 23-24.)

Regarding the potential eye-witness, Petitioner has not shown that failure to interview Ms. Penick prejudiced his defense.  Petitioner offers nothing to support his conclusory assertion that Ms. Penick might have excluded Petitioner as the perpetrator of the robbery.  Nor has he refuted the state habeas court's findings, based on the court reporter's record and the credible affidavit of defense counsel, that Ms. Penick could not have provided any beneficial testimony because she was working the drive-thru the morning of the offense, had her back turned to the incident, and was not even aware that a robbery had occurred.  (Docket No. 11-39 at 24.)

As previously discussed, Petitioner's claim regarding the jurors who allegedly saw him in shackles is also unavailing.  Because Petitioner has not refuted the state habeas court's findings that jurors did not see Petitioner in shackles and that Mr. Hale does not believe the incident actually occurred, Petitioner cannot show that Mr. Hale rendered ineffective assistance by failing to interview the jurors about the incident.

Petitioner's claim regarding a possible alibi from his parole officer is also refuted by the state habeas court's findings.  That court found "based on the credible affidavit of Jeff Hale that .

. . Hale contacted [Petitioner's] alleged alibi witness, his parole officer, and determined that the parole officer would not provide testimony to support the alibi defense." (Docket No. 11-39 at 23.) Petitioner has not presented clear and convincing evidence to refute these findings. Instead, he merely states that his parole officer later denied ever speaking to Mr. Hale about a potential alibi. However, Petitioner has not presented a sworn statement from his parole officer supporting this claim and Petitioner's hearsay statement is not sufficient to satisfy Petitioner's burden here. Petitioner also contends that he signed a register at the parole office and cashed a check from the parole office the same day of the robbery and that investigation of these events would have supported his alibi. (Docket No. 16 at 24.) However, Petitioner has not shown that he made Mr. Hale aware of these events, and based on Mr. Hale's determination that the parole appointment would not provide an alibi for Petitioner, Hale was not ineffective by failing to request records related to the appointment.

Thus, Petitioner has not shown that his trial counsel rendered ineffective assistance by failing to investigate possible defenses.

B. Failure to Object

Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to the following: (1) the trial court's denial of the jury's request to view Petitioner up-close; (2) the trial court's discussion of the possibility for a recidivist enhancement under state law; and (3) the prosecutor's statements during closing arguments regarding money seized from Petitioner's home. (Docket No. 1 at 10.) However, as discussed previously, Petitioner has not shown that the trial court or the prosecutor erred in these instances. Thus, Petitioner cannot show that Mr. Hale was ineffective for failing to object on these grounds. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("[c]ounsel is not required by the Sixth Amendment to file meritless

motions"); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

In sum, Petitioner has not shown that the state court's rejection of his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established Federal law.  Thus, Petitioner is not entitled to federal habeas relief based on the performance of his trial counsel.

V.  Appellate Counsel Performance

Petitioner claims that his appellate counsel rendered ineffective assistance by not filing a motion to reset the time to move for a new trial based on the alleged shackling incident.  (Docket No. 1 at 11.)  Petitioner contends it was clear from the trial record that Petitioner's trial counsel had not followed up regarding the incident, as he said he would, by speaking to the jurors involved and filing a motion for new trial.  Petitioner further asserts that his appellate counsel failed to investigate whether Ms. Penick or Petitioner's parole officer could have benefitted Petitioner's case.

An accused is constitutionally entitled to effective assistance of counsel on direct appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  Claims of ineffective assistance of counsel are evaluated under the standard in *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Murray*, 477 U.S. 527 (1986).  To establish that appellate counsel's performance was deficient in the context of an appeal, a petitioner must first show that his attorney was objectively unreasonable in failing to find arguable issues to appeal, *i.e.*, counsel unreasonably failed to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  The petitioner must then demonstrate that he was actually prejudiced by his counsel's errors.  *Id.* at 285-286; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).  To establish actual prejudice,

a petitioner must show a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on appeal." *Robbins*, 528 U.S. at 285.

Petitioner has not satisfied his burden under *Strickland* as to his claims of ineffective assistance of appellate counsel.  Under the Texas Rules of Appellate Procedure, a motion for a new trial must be filed within thirty days after sentence has been imposed or suspended in open court.  Tex. R. App. P. 21.4.  Grounds for filing such a motion include: "(e) when a material defense witness has been kept from court by force, threats, or fraud, or when evidence tending to establish the defendant's innocence has been intentionally destroyed or withheld, thus preventing its production at trial."  Tex. R. App. P. 21.3.  Petitioner has not shown that his appellate counsel could have made a viable motion for a new trial under this or any other provision.  Although the record supports Petitioner's contention that his trial counsel intended to follow up regarding the shackling incident but failed to do so, this is insufficient to show that a motion for a new trial would have had a reasonable probability of success.  Moreover, based on trial counsel's statement that he does not believe that the incident, if it even occurred, had any impact on the trial, and the habeas court's finding that the trial record does not support a finding that jurors saw Petitioner in restraints, there is no reason to believe Petitioner could have obtained a new trial on this basis.  Similarly, Petitioner's arguments regarding other potentially favorable witnesses have also been shown to lack merit.  Thus, Petitioner has not demonstrated a reasonable probability that, but for his appellate counsel's conduct, he would have been granted a new trial.  See *McAfee v. Thaler*, 630 F.3d 383, 395 (5th Cir. 2011).  Nor has Petitioner shown that the state habeas court's denial of this claim on the merits was contrary to, or involved an unreasonable application of, federal law as set forth in *Strickland*.  Thus, Petitioner's claims of ineffective assistance by appellate counsel do not merit federal habeas relief.

<u>CERTIFICATE OF APPEALABILITY</u>

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

<u>CONCLUSION</u>

Finding no unreasonable determination of fact or unreasonable application of clearly established federal law in the record of the state proceedings, the Court ORDERS the following:

1.    Respondent's Motion for Summary Judgment (Docket No. 15) is GRANTED.

2.    Petitioner's application for federal habeas relief is DENIED.

3.    A certificate of appealability is DENIED.

4.    All other pending motions are DENIED.

5.    This habeas action is DISMISSED with prejudice.

The Clerk will provide a copy to the parties.


SIGNED at Houston, Texas, this 5th day of August, 2014.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE